IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ R. RIVERA,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | CIVIL NO.: 12-1459 (MEL) |

**OPINION AND ORDER**

**I.　PROCEDURAL BACKGROUND**

José R. Rivera ("plaintiff" or "claimant") was born in 1963, has a high school diploma, two years of college education, and was self-employed as a telecommunications technician until December of 2007. (Tr. 31, 207, 216). On December 18, 2009, claimant filed an application for Social Security Disability Insurance benefits, alleging disability due to back impairments, with a history of surgery, causing pain, swelling, cramps, and numbness in his legs. (Tr. 186, 199). The alleged onset date of the disability was September 26, 2008, and the end of the insurance period was December 31, 2009. (Tr. 195). Plaintiff's application was denied initially, as well as on reconsideration. (Tr. 13). After plaintiff's timely request was granted, a hearing took place before an Administrative Law Judge ("ALJ") on November 9, 2010. Id. On November 19, 2010, the ALJ rendered a decision denying plaintiff's claim. (Tr. 21). The Appeals Council denied plaintiff's request for review on April 11, 2012; therefore, the ALJ's decision became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant"). (Tr. 1).

On June 12, 2012, plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), alleging that it was not based on substantial evidence. ECF No. 1, at 1-2. On December 14, 2012, defendant filed an answer to the complaint and a certified transcript of the administrative record. ECF Nos. 12; 13. Both parties have filed supporting memoranda. ECF Nos. 20; 25.

## II. LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered his final determination on an application for disability benefits, a district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's fact findings are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Irlanda Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B.  Disability Under the Social Security Act

To establish entitlement to disability benefits, the claimant bears the burden of proving that he or she is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146-47 (1987). An individual is deemed to be disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S. C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140-42. If it is determined that the claimant is not disabled at any step in the evaluation process, then the analysis will not proceed

to the next step.  At step one, it is determined whether the claimant is working and thus engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If so, then disability benefits are denied.  20 C.F.R. § 404.1520(b).  Step two requires the ALJ to determine whether the claimant has "a severe medically determinable physical or mental impairment" or severe combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If he does, then the ALJ determines at step three whether the claimant's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, then the claimant is conclusively found to be disabled.  20 C.F.R. § 404.1520(d).  If not, then the ALJ at step four assesses whether the claimant's impairment or impairments prevent her from doing the type of work he or she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  If the ALJ concludes that the claimant's impairment or impairments do prevent her from performing her past relevant work, the analysis then proceeds to step five.  At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[1] combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied.  20 C.F.R. § 404.1520(g).

Under steps one through four, the plaintiff has the burden of proving that he cannot return to his former job because of his impairment or combination of impairments.  Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam).  Once he has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform."  Id.

---

[1] An individual's residual functional capacity is the most that he or she can do in a work setting despite the limitations imposed by her mental and physical impairments.  20 C.F.R. § 404.1545(a)(1).

4

## III. THE MEDICAL EVIDENCE CONTAINED IN THE RECORD[2]

On September 26, 2008, plaintiff injured his back while "making a heavy effort." (Tr. 17). He felt a pinch that radiated down his left leg. (Tr. 354). Following this incident, plaintiff sought treatment at the Hampton Road Orthopedics and Sports Medicine Center. (Tr. 17). On October 16, 2008, a magnetic resonance imaging study ("MRI") was performed. (Tr. 17, 358). The MRI revealed a moderately large central disc extrusion, slightly more pronounced on the left at the L4-L5 level. (Tr. 17, 359). The L4-L5 disc was "mild-moderately narrowed and desiccated," and the right facet joint was mildly hypertrophic. Id. Moreover, the study revealed moderately diffused predominantly left disc extrusion displacing the left S1 nerve at the L5-S1 level. Id. The L5-S1 disc was "mildly narrowed and mild-moderately desiccated." Id. On October 27, 2008, and November 25, 2008,[3] plaintiff was injected with epidural steroids at the L4-L5 and L5-S1 levels due to lumbar radiculopathy. (Tr. 17). On December 2, 2008, plaintiff complained that the second injection did not provide relief and that the "numbness, tingling, and weakness in his left leg" was worsening. (Tr. 350). He was diagnosed with continued left lumbar radiculopathy. Id. During this visit, plaintiff displayed interest in the "surgical management" of his back illness and was referred to Dr. John W. Aldridge ("Dr. Aldridge"). Id. On December 5, 2008, plaintiff was examined by Dr. Aldridge. (Tr. 344). Plaintiff complained about "worsening low back and left leg pain" and was diagnosed with displacement of the lumbosacral intervertebral disc. (Tr. 17, 344-45). Consequently, Dr. Aldridge performed a laminectomy and discectomy on plaintiff on December 11, 2008. (Tr. 17, 339-40). Plaintiff was

---

[2] The record also contains evidence the plaintiff was diagnosed with major depression and treated for depressive and anxious symptomology with psychotherapy and pharmacology; however, plaintiff does not raise any argument contesting the ALJ's handling of this evidence in his appeal of the ALJ's denial of social security benefits. (Tr. 19, 398-403); see also ECF No. 20.

[3] A careful analysis of the record leads to the conclusion that the ALJ mistakenly indicated that the date of the second epidural steroid injection was "November 25, 2009" instead of November 25, 2008. (Tr. 17). Although no conclusive record of the injections is present in plaintiff's medical record, the "second injection" was mentioned by Dr. Adrian T. Baddar in his progress notes dated on December 2, 2008. (Tr. 350).

diagnosed with herniated nucleus pulposus. (Tr. 18, 339). Plaintiff "tolerated the procedure well," was recommended "ice, rest, physical therapy, and pain control medications," and was discharged the following day, December 12, 2008. (Tr. 17-18, 334-35, 340). From December 19, 2008 to February 9, 2009, plaintiff reported improvement in his back condition, expecting a single regression on January 30, 2009. (Tr. 18, 312-28). On February 10, 2009, plaintiff reported that his preoperative symptoms returned and the development of paresthesias in his left leg involving the left S1 and L5 distribution. (Tr. 311). Despite these complaints, it was noted that his "surgery incision was healing well, and a strength of 5/5 was present in both lower extremities." (Tr. 18, 311). The clinic picture remained unchanged until March 20, 2009. (Tr. 18). On this date, as a result of the continued resurgence of postoperative symptoms (i.e. parathesias in the left leg), plaintiff was referred for an MRI. (Tr. 305). On March 27, 2009, the MRI of the lumbar spine revealed a left hemilaminectomy at the L5-S1 level with a diffuse annular disc bulge, enhancement around the transiting left S1 nerve root compatible with granulation tissue and mild distortion, and a small board-based posterior disc protrusion mildly deforming the ventral sac at L4-L5 level. (Tr. 18, 300-01). Despite these results and continued parathesias in his left leg, plaintiff continued to display optimum strength in the lower extremities in his April 28, 2009 medical visit. (Tr. 298). On May 28, 2009, plaintiff underwent an RFC assessment performed by physical therapist Bill Powers ("Powers"). (Tr. 289-297). The RFC assessment report, titled "Functional Capacity/Work Disability Evaluation Report", states that plaintiff is restricted to a "sedentary work category within a limited work plane … showed moderate pain levels at the intake that increased minimal activity. [Plaintiff] was [also] not able to tolerate lifting, pushing or pulling type activity." (Tr. 291).

On November 18, 2009, plaintiff sought treatment for low back and left leg pain at the emergency room of Clínica Española. (Tr. 18, 364-66). A radiographic examination identified a muscle spasm and anterolateral spondylosis. (Tr. 18, 367). Following the examination, plaintiff was diagnosed with L4-L5 discogenic disease, L5-S1 discogenic disease, and retrolisthesis at the L5-S1 level. (Tr. 18, 369).

IV.   LEGAL ANALYSIS

The ALJ found that plaintiff was not disabled at step five where, considering plaintiff's age, work experience, education, RFC, and the testimony of the vocational expert ("VE"), he concluded that other work existed in the national economy that plaintiff could perform. (Tr. 19-20). Typically, the Commissioner meets his burden at step five, as in the instant case, by relying on the testimony of a VE. Ramos v. Sec'y of Health & Human Services, 514 F. Supp. 57, 64 (D.P.R. 1981). In the present case, the ALJ asked the VE if an individual with "the same work experience, the same age, the same academic vocational profile as that of the claimant, in addition a person whose *maximum exertional capability is light* and whose maximum mental capability is engaging in simple repetitive tasks" could perform a job in the regional or national economy. (Tr. 32) (emphasis added). "The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as cafeteria attendant . . . and small parts assembler . . . ." (Tr. 20). Plaintiff alleges that the ALJ presented the VE with hypothetical questions that did not accurately reflect all of the plaintiff's limitations as evinced in "Dr. Aldridge's record," particularly those exposed in the "Functional Capacity/Work Disability Evaluation Report" ("RFC assessment") performed by physical therapist Bill Powers on May 28, 2009. (Tr. 289-297); see also  ECF No. 20, at 2, 17, 19. As mentioned above, Powers' RFC assessment reported that plaintiff was limited to sedentary work. (Tr. 291).

7

No controversy exists as to the fact that plaintiff's treating source was Dr. Aldridge and, therefore, his opinion was entitled to controlling weight. Polanco–Quiñones v. Astrue, 477 F. App'x 745, 746 (1st Cir. 2012) (quoting 20 C.F.R. § 404.1527(c)(2)) ("a treating source's opinion on the question of the severity of an impairment will be given controlling weight so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'"). Moreover, the ALJ provided reasons for giving Dr. Aldridge's opinion controlling weight pursuant to the applicable regulations. 20 C.F.R. §404.1527(c)(2) (stating that the ALJ will always give good reasons for the weight given to a treating source). The ALJ stated that controlling weight was given to Dr. Aldridge because he presented "a well-developed longitudinal history of the claimant's back condition and demonstrated the improvement with the prescribed treatment." (Tr. 19). The same cannot be said about Powers, who appears only once in plaintiff's medical record. (Tr. 289-297).

Plaintiff's main argument is that the ALJ disregarded substantial evidence and failed to utilize the correct legal standards, because he ignored evidence by not including the physical limitations reported by Powers in his hypothetical questions to the VE. ECF No. 20, at 2, 4-6, 16, 20-21. While the ALJ's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). "[I]n order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported

by the outputs from the medical authorities." Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). In order to ensure that the answer is relevant an ALJ "must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions." Id. In the present case, the ALJ clearly states that he exclusively utilized the outputs from treating source, Dr. Aldridge, for the hypothetical questions posed to the VE. (Tr. 19). Dr. Aldridge consistently reported that plaintiff retained full strength, normal reflexes, and intact sensation following surgery. (Tr. 298, 305-06, 311, 325, 329). This substantial evidence led the ALJ to conclude that plaintiff's residual functional capacity permitted him to "perform light work." (Tr. 19).

Plaintiff also argues that since the RFC assessment is part of "Dr. Aldridge's record," Bill Powers' opinion is entitled to the same controlling weight as Dr. Aldridge's medical opinion; therefore the ALJ should have included the restrictions of the RFC assessment in his hypotheticals to the VE. See ECF No. 20, at 2-3; No. 25, at 6. Plaintiff contests that Powers' RFC assessment is part of "Dr. Aldridge's record" because it was performed in the same medical facility as Dr. Aldridge's examinations, the Hampton Road Orthopedics and Sports Medicine Center. See ECF No. 20, at 12, 17. This argument has no merit. Plaintiff fails to provide legal authority to support this conclusion and omits mentioning in his memorandum that the RFC assessment was performed by an individual other than Dr. Aldridge. (See ECF No. 20). Bill Powers' RFC assessment is not part of Dr. Aldridge's record. The fact that separate examinations, performed by different medical personnel, take place in the same medical institution does not necessarily amalgamate them into a joint opinion and force the ALJ to analyze them as one inseparable medical opinion. See Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir.2001) (internal citations omitted) ("[i]t is the ALJ's function to resolve conflicts

among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'"). Plaintiff's medical record clearly demonstrates that the opinions of Dr. Aldridge and Bill Powers are distinct and contradictory. (Compare Tr. 289-297, with Tr. 298, 305-06, 311, 325, 329).

Furthermore, as a physical therapist, Bill Powers is not an "acceptable medical source" that can provide evidence to establish an impairment under the Social Security Administrations regulations. See Social Security Rule 06-3p; see also 20 C.F.R. §§ 404.1513(a), 404.1527(d) (listing acceptable medical sources as: (1) licensed physicians; (2) licensed or certified psychologists; (3) licensed optometrists; (4) licensed podiatrists; and (5) qualified speech-language pathologists). Additionally, the record demonstrates that Bill Powers examined plaintiff only once, which is insufficient for his opinion to be entitled controlling weight, even if he were an acceptable medical source pursuant to the regulations. (Tr. 289-297); see also Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(d)(2)) ("The treating physician's opinion is given particular weight because of his 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'"). Finally, as a treating orthopedic surgeon, Dr. Aldridge's clinical findings are owed more deference than those of any other non-specialist, including Bill Powers. See Petrie v. Astrue, 412 F. App'x 401, 407 (2d Cir. 2011) ("[t]he regulations provide that an opinion of a specialist regarding medical issues related to his or her area of specialty must be given more weight than the opinion of a source who is not a specialist."); and 20 C.F.R. §§

404.1527(d)(5), 416.927(d)(5). Overall, the ALJ did not disregard substantial evidence by not giving equal weight to the opinions of Dr. Alridge and Bill Powers.

## V. CONCLUSION

Based on the foregoing analysis, the Court concludes that the Commissioner's decision was based on substantial evidence. Therefore, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of October, 2013.

s/Marcos E. López
U.S. Magistrate Judge
